**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| BRYAN MORGAN, | Civil Action No. |
| Plaintiff, | 1:25-cv-01332-TRJ-RGV |
| v. | |
| MURRAY BROTHERS ENTERPRISES, INC. d/b/a MURRAY BROTHERS FUNERAL HOME, | JURY TRIAL DEMANDED |
| Defendant. | |

**FIRST AMENDED COMPLAINT FOR DAMAGES**

COMES NOW, Bryan Morgan ("Plaintiff" or "Morgan"), by and through his undersigned counsel, and files this, his First Amended Complaint for Damages, and shows the Court as follows:

**NATURE OF COMPLAINT**

1. Plaintiff brings this action for damages and reasonable attorney fees against Defendant Murray Brothers Enterprises, Inc. d/b/a Murray Brothers Funeral Home ("Defendant") for violations of his rights under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Americans with Disabilities Act of 1990, as amended ("ADA"), the Civil Rights Act of 1991,

1

42 U.S.C. § 1981, et. seq. ("Section 1981"), and the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA").

2. This action seeks declaratory and injunctive relief, compensatory and punitive damages, liquidated damages, and reasonable attorney's fees and costs for discrimination based on race and disability, failure to provide reasonable accommodations, retaliation, and failure to pay overtime wages in violation of federal law.

## JURISDICTION AND VENUE

3. Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331,28 U.S.C. §§ 1343, 42 U.S.C. § 1981, 42 U.S.C. § 12117(a), and 29 U.S.C. § 216(b).

4. The unlawful employment practices alleged in this Complaint were committed within this district. In accordance with 28 U.S.C. § 1391, 42 U.S.C. §1981, 42 U.S.C. § 2000e-5(f)(3), and 29 U.S.C. § 216(b), venue is appropriate in this Court as Defendant maintains its principal place of business in Atlanta, Georgia, and all or a substantial part of the events giving rise to Plaintiff's claims occurred in this district.

**PARTIES**

5. Plaintiff Bryan Morgan is a Caucasian male citizen of the United States and resident of Atlanta, Georgia, residing at 1634 Willis Mill Road SW, Atlanta, GA 30311, and is subject to the jurisdiction of this Court.

6. At all times relevant to this action, Plaintiff was an employee of Defendant from June 21, 2021, through August 20, 2024, initially as a Receptionist and later as a Death Certificate Processor.

7. At all times relevant, Defendant Murray Brothers Enterprises, Inc. d/b/a Murray Brothers Funeral Home was qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this District at 1199 Utoy Springs Road, Atlanta, GA 30331.

8. During all times relevant hereto, Defendant has been a "person" engaged in an industry affecting commerce who has fifteen (15) or more employees for each working day in each of twenty or more calendar weeks in the current or precedingcalendar year, and is therefore an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b), and the ADA, 42 U.S.C. § 12111(5)(A).

9. At all times relevant hereto, Defendant has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged

in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

10. Defendant may be served with process by delivering a copy of the summon sand complaint to its registered agent William Gayle Murray Sr. at 1199 Utoy Springs Road, Atlanta, GA 30331.

## FACTUAL ALLEGATIONS

11. Plaintiff began working for Defendant on June 21, 2021, as a Receptionist, and was later promoted to Death Certificate Processor by January 2023.

12. Throughout his employment, Plaintiff was the only Caucasian employee at Defendant's funeral home.

13. During Plaintiff's employment, William Galyano Murray II, an owner and managing partner of Defendant, repeatedly referred to Plaintiff as a "token," making clear reference to Plaintiff's race.

14. Ken Murray, an owner and former CEO of Defendant, repeatedly accused Plaintiff of showing "white privilege" and, in January 2023, berated Plaintiff for approximately one hour regarding white privilege.

15. Plaintiff was criticized for sending work-related emails about phishing attempts and was told to "stay in my lane" by Ken Murray.

16. Plaintiff's coworkers told him that they interpreted his actions as a "white boy coming in here and thinking we're stupid."

17. Ken Murray made discriminatory statements about race in the workplace, including stating that "white people were easier to work with because they didn't keep tabs and weren't petty."

18. Plaintiff has several disabilities, including generalized anxiety disorder, bipolar disorder, ADHD, depression, HIV, neuropathy, and various back and nerve issues.

19. In or around May 2024, Plaintiff disclosed his mental health conditions to Candice Mathis, Vice President and owner of Defendant.

20. Following this disclosure, on June 28, 2024, Defendant required Plaintiff to sign new restrictive employment terms and reduced his hours from 40 to 20 per week while maintaining the same workload.

21. Despite the reduction in hours, Plaintiff regularly worked 3-6 hours of uncompensated overtime per week to complete his assigned duties.

22. Prior to the reduction in hours, Plaintiff was working approximately 35 hours per week and making $35.00 per hour.

23. After the reduction in hours, Plaintiff continued to be paid at the rate of $35.00 per hour but was only paid for 20 hours per week despite regularly working 23-26 hours per week to complete his assigned duties.

24. Defendant was aware that Plaintiff was working more than 20 hours per week, as Plaintiff documented the overtime on his time sheets, but Defendant failed to compensate Plaintiff for these additional hours worked.

25. Defendant willfully failed to pay Plaintiff overtime compensation at a rate of one and one-half times his regular rate of pay for all hours worked in excess of 40 hours in a workweek.

26. Defendant's failure to pay overtime was willful, as Defendant was aware of the FLSA's requirements and deliberately chose not to comply with them.

27. Plaintiff was subjected to stricter attendance policies than his co-workers and was required to provide medical documentation for emergencies, requirements not imposed on other employees.

28. Prior to these changes, Plaintiff had successfully cleared Defendant's death certificate backlog by April 2024 and helped remove the funeral home from license probation.

29. Plaintiff had no prior reprimands or performance issues during his employment with Defendant.

30. On August 20, 2024, immediately after requesting a reasonable accommodation for his disabilities, Plaintiff was terminated from his employment.

31. During the termination meeting, Candice Mathis dismissively stated "we don't need your mental health to suffer" while rolling her eyes.

32. Plaintiff was escorted from the premises, and no formal reason was provided for his termination.

33. Following Plaintiff's termination, his position was given to an African-American family member who had been training behind the scenes.

34. Although Defendant may purport to provide legitimate, non-discriminatory reasons for Plaintiff's termination, these reasons are pretext for discrimination based on race and disability.

## CLAIMS FOR RELIEF

### COUNT I: RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

35. Plaintiff re-alleges paragraphs 1-34 as if set forth fully herein.

36. Defendant's actions in subjecting Plaintiff to different terms and conditions of employment than African-American employees, subjecting him to pervasive harassment because of his race, and ultimately terminating his employment constitute unlawful discrimination on the basis of his race (Caucasian) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq.

37. The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and has otherwise adversely affected his status as an employee because of his race.

38. Defendant's discriminatory conduct included, but was not limited to:

a) Repeatedly referring to Plaintiff as a "token";

b) Subjecting Plaintiff to repeated hostile comments about "white privilege";

c) Berating Plaintiff for an hour regarding white privilege;

d) Making discriminatory statements about race in the workplace; and

e) Replacing Plaintiff with an African-American employee following his termination.

39. Defendant has willfully and wantonly disregarded Plaintiff's rights, and its discrimination against Plaintiff was undertaken in bad faith.

40. As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has been made the victim of acts that have adversely affected his economic, psychological, and physical well-being.

41. Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful discrimination.

## COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

42. Plaintiff re-alleges paragraphs 1-34 as if set forth fully herein.

43. Plaintiff is a qualified individual with disabilities within the meaning of the ADA, including generalized anxiety disorder, bipolar disorder, ADHD, depression, HIV, neuropathy, and various back and nerve issues.

44. Plaintiff was able to perform the essential functions of his job with or without reasonable accommodation.

45. Defendant was aware of Plaintiff's disabilities, as Plaintiff disclosed his mental health conditions to management in May 2024.

46. Defendant discriminated against Plaintiff because of his disabilities by:

    a) Requiring him to sign new restrictive employment terms;

b) Reducing his hours while maintaining the same workload;

c) Subjecting him to stricter attendance policies than non-disabled employees;

d) Requiring medical documentation not required of other employees; and

e) Terminating his employment shortly after requesting accommodation.

47. Defendant's actions constitute discrimination on the basis of disability in violation of the Americans with Disabilities Act, as amended.

48. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered damages including lost wages, emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

## COUNT III: FAILURE TO ACCOMMODATE IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

49. Plaintiff re-alleges paragraphs 1-34 as if set forth fully herein.

50. Plaintiff requested reasonable accommodation for his disabilities.

51. Instead of engaging in the interactive process to determine an appropriate accommodation, Defendant responded by immediately terminating Plaintiff's employment.

52. Defendant's failure to provide reasonable accommodation and engage in the interactive process constitutes discrimination in violation of the Americans with Disabilities Act, as amended.

53. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered damages including lost wages, emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

## COUNT IV: RETALIATION IN VIOLATION OF TITLE VII AND THE AMERICANS WITH DISABILITIES ACT

54. Plaintiff re-alleges paragraphs 1-34 as if set forth fully herein.

55. Plaintiff engaged in protected activity by requesting accommodation for his disabilities.

56. Defendant retaliated against Plaintiff by terminating his employment immediately after his request for accommodation.

57. There was a causal connection between Plaintiff's protected activity and his termination.

58. As a direct and proximate result of Defendant's retaliatory actions, Plaintiff has suffered damages including lost wages, emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

11

59. Defendant's conduct was willful, malicious, and in reckless disregard of Plaintiff's federally protected rights, warranting the imposition of punitive damages.

## COUNT V: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981

60. Plaintiff re-alleges paragraphs 1-34 as if set forth fully herein.

61. Section 1981 prohibits discrimination in the making and enforcement of contracts, including employment contracts, on the basis of race.

62. Defendant discriminated against Plaintiff because of his race (Caucasian) by:

a) Repeatedly referring to him as a "token";

b) Subjecting him to hostile comments about "white privilege";

c) Requiring him to sign restrictive employment terms not required of African-American employees;

d) Berating him regarding white privilege for approximately one hour; and

e) Terminating his employment and replacing him with an African-American employee.

63. As a direct and proximate result of Defendant's discrimination, Plaintiff has suffered damages including lost wages, emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

## COUNT VI: RETALIATION IN VIOLATION OF 42 U.S.C. § 1981

64. Plaintiff re-alleges paragraphs 1-34 as if set forth fully herein.

65. Plaintiff engaged in protected activity by opposing race discrimination in the workplace, including questioning discriminatory treatment and requesting fair treatment regardless of his race.

66. In response to Plaintiff's protected activity, Defendant:

   a) Required him to sign new restrictive employment terms;

   b) Reduced his hours while maintaining the same workload;

   c) Subjected him to stricter attendance and documentation requirements than African-American employees; and

   d) Terminated his employment.

67. There was a causal connection between Plaintiff's protected activity and the adverse employment actions taken against him.

68. As a direct and proximate result of Defendant's retaliatory actions, Plaintiff has suffered damages including lost wages, emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

69.Defendant's conduct was willful, malicious, and in reckless disregard of Plaintiff's federally protected rights, warranting the imposition of punitive damages.

## COUNT VII: VIOLATIONS OF THE FAIR LABOR STANDARDS ACT - FAILURE TO PAY OVERTIME

70. Plaintiff re-alleges paragraphs 1-34 as if set forth fully herein.

71. At all times relevant to this action, Plaintiff was an "employee" of Defendant within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

72. At all times relevant to this action, Defendant was an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d).

73. The FLSA requires covered employers, such as Defendant, to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per workweek.

74. During the relevant time period, Plaintiff regularly worked in excess of his scheduled hours to complete his assigned duties, but Defendant failed to compensate him for all hours worked.

75. Specifically, after Defendant reduced Plaintiff's scheduled hours from 40 to 20 hours per week on June 28, 2024, Plaintiff regularly worked 3-6 additional hours per week to complete his assigned duties, which Defendant failed to compensate him for despite Plaintiff documenting these hours on his time sheets.

76. Defendant's failure to pay Plaintiff overtime compensation at the rate of one and one-half times his regular rate of pay for all hours worked in excess of forty hours in a workweek was a violation of the FLSA, 29 U.S.C. § 207.

77. Defendant's violations of the FLSA were willful in that Defendant knew or showed reckless disregard for whether its conduct was prohibited by the FLSA.

78. As a result of Defendant's violations of the FLSA, Plaintiff has suffered damages by being denied overtime wages in accordance with the FLSA in an amount to be determined at trial, and is entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## COUNT VIII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

79. Plaintiff re-alleges paragraphs 1-34 as if set forth fully herein.

80. Defendant's conduct was extreme and outrageous, beyond all bounds of decency, and utterly intolerable in a civilized society, including but not limited to:

a) Repeatedly referring to Plaintiff as a "token" due to his race;

b) Subjecting Plaintiff to an hour-long berating session about "white privilege" that left him in tears;

c) Creating a hostile work environment where Plaintiff was constantly criticized and belittled in a way his African-American coworkers were not;

d) Forcing Plaintiff to sign restrictive employment terms not required of other employees;

e) Requiring Plaintiff to maintain a full-time workload while reducing his hours to part-time, causing severe stress and anxiety;

f) Dismissively rolling her eyes and stating "we don't need your mental health to suffer" when Plaintiff requested accommodation for his disabilities, immediately before terminating him; and

g) Terminating Plaintiff in retaliation when he requested reasonable accommodations under the ADA.

16

81. Defendant acted recklessly and with intent to cause Plaintiff severe emotional distress.

82. As a direct result of Defendant's extreme and outrageous conduct, Plaintiff suffered severe emotional distress, including:

a) Experiencing anxiety and depression requiring ongoing mental health treatment;

b) Requiring therapy sessions to process the trauma of his discriminatory treatment;

c) Being left devastated by discriminatory comments targeting both his race and disabilities;

d) Experiencing such severe workplace stress that it exacerbated his pre-existing mental health conditions

83. The severe emotional distress suffered by Plaintiff was a reasonably foreseeable consequence of Defendant's extreme and outrageous conduct.

84. As a direct and proximate result of Defendant's intentional infliction of emotional distress, Plaintiff has suffered damages including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

17

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

(a) A trial by jury as to all triable issues of fact;

(b) Back pay and benefits, including but not limited to lost wages, bonuses, and other employment benefits, plus interest;

(c) Front pay in lieu of reinstatement;

(d) Compensatory damages for emotional distress, mental anguish, loss of dignity, and other intangible injuries;

(e) Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

(f) Unpaid overtime wages due under the FLSA;

(g) Liquidated damages equal to the unpaid overtime wages due under the FLSA;

(h) Declaratory relief to the effect that Defendant has violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and the Fair Labor Standards Act;

18

(i) Injunctive relief prohibiting Defendant from further unlawful

conduct of the type described herein;

(j) Reasonable attorney's fees and expenses of litigation;

(k) Prejudgment interest at the rate allowed by law;

(l) All other relief to which he may be entitled.

Respectfully submitted this 18th day of April, 2025.

**BARRETT & FARAHANY**

*/s/ Constance Cooper*
Constance Cooper
Georgia Bar No. 469041

*Counsel for Plaintiff*

2921 Piedmont Road
Atlanta, GA 30305
(404) 214-0120
constance@justiceatwork.com
Fax: (404) 214-0125